In this inmate-on-inmate assault case that took place in the United States prison in Pollock, Mr. Waller presented substantial evidence that he had acted in self-defense and we contend, in fact, carried his burden of proof in that matter. No witness for the government testified that they saw the beginning of this incident. The incident itself was on video, but it began in a portion of the video, or a portion where the camera did not reach. The most important witness was Mr. Ali, who was another inmate, who was speaking to Mr. Waller at the time that this happened. And Mr. Ali established that Mr. Waller had been in his cell talking to him for a short time with his back to the wall. When Mr. Waller was leaving, the assailant, Mr. Scott, who Ali had seen sitting in the common area watching TV, attacked Mr. Waller. You're asking us to say, as a matter of law, Mr. Waller has established self-defense? Yes, Your Honor. It was not rebutted by the government. Well, this was submitted, self-defense was submitted to the jury. And the instructions said to the jury that they went through the elements of self-defense, but it also said a person must use no more force than appears reasonably necessary under the circumstances. And the jury took that into account, didn't they? Yes, Your Honor. So, I viewed the video, the jury viewed the video. How can we say, as a matter of law, that Mr. Waller used no more force than appears reasonably necessary under the circumstances? Well, the government didn't rebut it in any way as our contention. In the video, Mr. Waller is stabbing Mr., is it Mr. Smith? Scott. Scott. Yes, Your Honor. And it was Mr. Waller's testimony that he was not armed at the time, that he, in fact, disarmed Mr. Scott. Mr. Scott was a lot larger, I mean, I'm sorry, Mr. Waller was a lot larger than Mr. Scott. And Mr. Scott, I mean, Mr. Waller spoke about that in his testimony, that he did handle himself and he disarmed him, and yes, he did. But the jury saw the video. How can we say, as a matter of law, they saw Mr. Waller stabbing Mr. Scott, that Mr. Waller used no more force than appears reasonably necessary under the circumstances? And your brief didn't cover that. Well, again, Your Honor, we would contend that when we do that, when we put on such substantial evidence, that the government has a burden to rebut it in some way, and that they did not. It was never rebutted by any witness that they called, not on their original case, nor the one rebuttal witness that they called who spoke briefly about what Mr. Waller had told him after they took Mr. Waller in and talked to him about the assault. When you say rebutted, what is the burden on the government to rebut it? Proponents of the evidence beyond a reasonable doubt? What is beyond a reasonable doubt, Your Honor, that once we prove, which we're contending that we did, that he was acting in self-defense. And what is your burden to prove it? It's a preponderance of the evidence. So you're saying you have to prove it by preponderance of the evidence, then the burden shifts to them to rebut it beyond a reasonable doubt? Yes, Your Honor. That's what we would contend. And, again, I think Mr. Ali's testimony is the most important testimony, but the government's case in chief was very brief. I mean, basically they called the staff member who encountered Mr. Scott after the incident. They called Mr. McKinney about the video, and they called the nurse about Mr. Scott's injuries. You know, these cases are difficult cases, and this is an instance where we would contend that he did present proof that by a preponderance of the evidence, that he had acted in self-defense based on the witnesses that were called by the government and the witnesses that he called. Going to the point of who initiated, I thought that there was some testimony from Mr. Ali from which the jury could infer that he did not see the beginning of the fight.  And so he can't say for sure who initiated it. And then also Mr. Scott told someone immediately afterwards that Mr. Waller had attacked him. I want to say that Mr. Scott told Mr. Reed, who we called as a witness, that I think Mr. Reed asked him what was going on, and he said I was about to out a snitch, and he attacked me or something like that. So isn't that some evidence, those two things? Isn't that at least some evidence to create a fact question of who threw the first punch, as you will? It is some evidence, Your Honor. I just don't see why we don't have a fact question for the jury on that, and also on the more force that appears reasonably necessary under the circumstances. Well, I'm trying my best to address it, but again, Mr. Scott did testify. Apparently he wouldn't speak to the government. He wouldn't speak to us. We called him by video. He denied even being attacked that day. I mean it's not part of the record in this matter, but he was sort of acting up. They hit him cuffed, and he didn't want to be there, and he vehemently denied the incident. I think he left it with the government on cross-examination that he had been shot in the head, and he just didn't remember those sort of things, Your Honor. But, yeah, there was a lot of evidence that Mr. Scott had been saying that Mr. Waller was a snitch and that something needed to be done about it. And we think that that also goes to the incident where Mr. Ali was there and who would have been the aggressor in that matter. Mr. Ali testified, again, that Scott was sitting over in a common area. He wasn't there. He apparently came over there after he recognized Waller and was the aggressor in this matter, Your Honor. We contend that we've proved by a preponderance of the evidence that he acted in self-defense. Thank you. All right, you've saved time for rebuttal, Mr. Blanchard. Thank you. Ms. Griffin? May it please the Court, my name is Mignon Griffin, and I represent the United States. Your Honors, the evidence introduced at trial established that the victim in this case, Robert Scott, was going around the penitentiary there in Pollock telling other inmates that the defendant, John Waller, was hot or was a snitch. The evidence also established that rather than going to the appropriate authorities in the penitentiary, and I believe the evidence established at trial that he could have gone to any staff member and told them that he was concerned about his safety. Well, there's evidence that if he'd done that, he would have been in solitary confinement for a year, right? Yes, ma'am, but that is still a – well, he would have been placed in the shoe, which I don't believe is absolutely solitary confinement, but it is to protect the inmate, and it is a legal, reasonable alternative that he could have caused to happen, and that is one of the elements that he has to prove to prove self-defense, is that he did not exhaust every reasonable legal alternative, and going to the authorities would have been one such thing. The testimony was that they would have investigated his complaint, and if they determined that he was actually in danger, they would have moved him to a different facility. So he could have done that, but instead of doing that, Mr. Waller took matters into his own hands, and he went into Mr. Scott's housing unit, which I think is also significant. He was assigned to a different housing unit than Mr. Scott, and in contravention of prison rules, he went into Mr. Scott's housing unit and attacked Mr. Scott. And he struck Mr. Scott at least four times as he chased him around the common area. One of the wounds the nurse testified was serious enough and potentially fatal, because it was, I'm sorry, at least very critical, because it was near his heart and lung, and required Mr. Scott to be transported to a local hospital. While Mr. Waller now, and at trial, claimed that he acted in self-defense, this claim is contrary to the statements both he and Mr. Scott made to prison officials immediately after the assault. Mr. Waller told Mr. McKinney, Mr. McKinney is the investigator for the prison. He testified that he was at home when the assault occurred, so he had to be called back up to the prison. He then watched the video. He was able to identify Mr. Waller as the attacker from the video, because he'd had previous interactions with him. And so he called Mr. Waller out and spoke to him. So within a couple hours, I believe Mr. McKinney said, of the assault, he talked to Mr. Waller, and Mr. Waller never told him that he acted in self-defense. He never told Mr. McKinney that Mr. Scott was attacking him. Instead, he said that he had to take care of himself in terms of he was fixing to be identified as a snitch, so he had to take care of himself. So that was the rebuttal evidence that the government called was Mr. McKinney to repeat his testimony from the government's case in chief that Mr. Scott, sorry, Mr. Waller had never said that he was defending himself from an immediate attack with a knife by Mr. Scott. Mr. Scott also, when he was being walked to the infirmary, told the staff member that was escorting him that he was attacked because he was about to expose a snitch. So both of those statements support the government's argument that Mr. Waller took the evidence, excuse me, took the matter into his own hands and attacked Mr. Scott. The government contends that Mr. Waller did not prove the affirmative defense of self-defense justification or necessity, however you want to deem it, by a preponderance. In the Montez case, this court said that when the only evidence that the defendant was acting in self-defense is his own self-serving testimony, then this court must ask whether viewing that testimony in the light most favorable to the government, a rational jury could have discredited his testimony. And I submit in this case it could have because, first of all, he's the only one that said that. And then Mr. Ali, as the court has already pointed out, Mr. Ali said that he did not see who threw the first punch. He did not see who initiated the incident. He also said he did not hear any words passed between the two men. He only assumed or guessed that Mr. Scott was the aggressor. Just to clarify, I have here in my notes, Mr. Waller specifically told Mr. McKinney that he had to protect himself because Mr. Scott was telling other inmates that Waller was a snitch. Mr. Scott, I mean, sorry, Mr. Waller, as I also pointed out, did not prove that he had no reasonable legal alternative to violating the law, as we've discussed. He could have notified the authorities in the prison that he was concerned for his safety in the Lee case. This court said that notifying the police of a potential attack is a reasonable legal alternative that someone must or should follow in order to claim the defense of self-defense. So he had an alternative that did not involve committing a crime, and he chose not to do it. He also had to prove, in order to establish self-defense, he had to prove that he did not recklessly or negligently put himself into a situation in which it was probable that he would be forced to choose the criminal conduct. In this case, as I mentioned, he was in Mr. Scott's housing unit, a place he should not have been, and he admitted, Mr. Waller admitted on cross-examination that had he not gone to that housing unit, the attack would not have occurred, at least not that day. And as your Honor, as previously pointed out, he used more force, which I think was reasonably necessary under the circumstances. He suffered no injuries at all. He immediately disarmed Mr. Scott, and yet he chased Mr. Scott across the common area, as you can see in the video, stabbing him four times in the brow once and three times in the chest. I'm sorry, twice in the chest and once in the abdomen. So he should have, if he was in fact the victim, initial victim in this case and not the aggressor, once he disarmed Mr. Scott, he should have stopped. He didn't need to then turn the knife on Mr. Scott. Your Honor, I think I've addressed most of the factual issues. Are there any? All right. Thank you, Ms. Griffin. Thank you. Mr. Blanchard, you've saved time for rebuttal. Thank you, Judge. Here's what I remember Mr. Waller telling or Mr. McKinney saying that Mr. Waller told him. I mean, this wasn't recorded. I don't always speak the Queen's English, but Mr. Waller certainly doesn't always speak the Queen's English. What I recall Mr. McKinney saying was that Mr. Waller said he was telling people I was a snitch and I had to do what I had to do. I mean, I think that was his way of saying that I had to protect myself. I had to act in self-defense. And it isn't only John Waller's self-serving testimony. Again, we do have Mr. Ali, and we have no video, nothing that refutes what he said. So I believe that we did carry our burden of proof, and I would ask that this matter be reversed. Thank you. All right. Thank you, Mr. Blanchard. The case is under submission. That's the case for today.